UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00177-GNS-HBB

BLUEGRASS MATERIALS COMPANY, LLC                                         PLAINTIFF

v.

FRANK W. FREEMAN; JAMES M. FREEMAN;
LAURA A. SCHOONOVER; BLACK GOLD OIL CO.
d/b/a C&L EXPLORATION CO.; and C&L FARMS,
PARTNERSHIP                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Exclude (DN 80), Plaintiff's Motion for Summary Judgment (DN 83), Defendants' Motion to Dismiss (DN 81), and Defendants' Motion for Summary Judgment (DN 82). For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment and Defendants' Motion to Dismiss are **DENIED**, and Plaintiff's Motion to Exclude is **DENIED AS MOOT**.

### I. BACKGROUND

This action is brought by Plaintiff Bluegrass Materials Company, LLC ("Plaintiff") against Defendants Frank W. Freeman, James M. Freeman, Laura A. Schoonover, Black Gold Oil Co., d/b/a C&L Exploration Co., and C&L Farms, a Partnership (collectively, "Defendants"), seeking, *inter alia*, a declaration terminating an oil and gas lease which Defendants own on Plaintiff's property. (Compl. ¶¶ 9-15, DN 1).

In 1985, Hettie Manning executed an oil and gas lease (the "Manning Lease") with Black Gold Oil Co. (Defs.' Mot. Summ. J. Ex. 1, DN 82-1). The Manning Lease states in part: "[i]t is

agreed that this lease shall remain in force for a term of ONE (1) year from this date, and as long thereafter as oil or gas, or either of them, is produced from said lease by the lessee." (Pl.'s Mot. Summ. J. Ex. 4, DN 83-5). After taking an assignment of the Manning Lease in 1995, Defendants obtained permits for two wells, Permit No. 71787 ("Well 1"), and Permit No. 71788 ("Well 2"). (Pl.'s Mot. Summ. J. Ex. 5, DN 83-6). These wells continually produced some level of oil each year from 1995 to 2018, when this action was filed. (Pl.'s Mot. Summ. J. Ex. 7, DN 83-8). Since 2010, Defendants have produced an average of roughly 175 barrels of oil per year. (Pl.'s Mot. Summ. J. Ex. 7). Production numbers for Well 1 and for Well 2 are equal for each year from 2010-2018 except for 2011, for which there is no record any oil was produced by Well 1.[1] (Pl.'s Mot. Summ. J. Ex. 7). From 2010 to 2019 Plaintiff received royalty payments from Defendants totaling $14,877.[2] (Pl.'s Mot. Summ. J. Ex. 9, DN 83-10).

Defendants have also more recently taken steps to expand their current activities on the Manning Lease. Permit No. 75401 ("Well 3") was plugged in June 1988 because it was a "dry hole". (Pl.'s Mot. Summ. J. Ex. 6, DN 83-7). Defendants reopened Well 3 for operation, and have also applied for and received permits to open two additional wells, Well 4 and Well 5, respectively. (Pl.'s Mot. Summ. J. Ex. 14, DN 83-15; J. Freeman Dep. 53:7-10).

Plaintiff operates hundreds of quarries across the nation, mining limestone and granite for use in the production of concrete and asphalt. (Pl.'s Mem. Supp. Mot. Summ. J. 2, DN 83-1). In

---

[1] Defendants dispute the accuracy of this report from the University of Kentucky, calling the report "completely erroneous". (J. Freeman Dep. 30:20-23, Jan. 8, 2020, DN 83-3). Defendants do not provide any explanation as to how the data is erroneous or how the University of Kentucky obtained this allegedly false data. (J. Freeman Dep. 30:20-33:7).

[2] Plaintiff has either returned funds previously paid or declined to cash royalty checks it has received since October 2016, which is when Plaintiff insists the Manning Lease terminated by its own terms. (Pl.'s Mot. Summ. J. Ex. 10, DN 83-11). Royalty payments "inadvertently deposited" by Plaintiff between October 2016 and December 2018 were remitted during the pendency of this action in December 2019. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 10, at 1-7, DN 93-10).

2010, Plaintiff executed a Special Warranty Deed purchasing land from Hydro Conduit Corporation for $574,230.00, part of which is subject to Defendants' oil and gas lease. (Pl.'s Mot Summ. J. Ex. 1, DN 83-2). Plaintiff now wishes to expand its mining operations onto land within the area covered by the Manning Lease. (Pl.'s Mem. Supp. Mot. Summ. J. 2). Matthew McCoy, Plaintiff's senior geologist responsible for estimating reserves and planning mining operations, estimates there are three million tons of recoverable limestone reserves on land encompassed by the Manning Lease, worth between $4 and $20 per ton. (McCoy Dep. 95:15-97:10, Dec. 18, 2019, DN 83-4; McCoy Aff. ¶ 13, DN 94-1).

## II.     DISCUSSION

### A.     Defendants' Motion to Dismiss

As a preliminary matter, the Court must address Defendants' motion to dismiss for lack of subject matter jurisdiction. (*See generally* Defs.' Mot. Dismiss, DN 81). "A federal district court has diversity jurisdiction where the amount in controversy exceeds $75,000, exclusive of interests and costs, and the matter . . . is between citizens of different States." *Shelton v. Print Fulfillment Servs., LLC*, No. 3:16-cv-563-DJH, 2017 WL 455554, at *1 (W.D. Ky. 2017) (internal quotation marks omitted) (citing 28 U.S.C. § 1332(a)).

A corporation is "a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). However, the rule does not apply to a non-corporation, such as a limited liability company. *KY Sols. Corp. v. Plastic Sys., LLC*, No. 3:12-cv-00531-H, 2012 WL 6043587, at *1 (W.D. Ky. Dec. 5, 2012) (citing *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1086 (11th Cir. 2010)). "Unlike the citizenship of a corporation, an LLC's citizenship is not determined by the company's

state of organization and principal place of business, but rather by the citizenship of each of its members." *Shelton*, 2017 WL 455554, at *1 (internal quotations omitted) (citation omitted).

Plaintiff is listed as a foreign limited liability company by the Kentucky Secretary of State. (Defs.' Resp. Pl.'s Mot. Summ. J. Ex. 2, DN 94-2). The sole member listed is Panadero Midco, LLC, which is a Delaware limited liability company. (Defs.' Resp. Pl.'s Mot. Summ. J. Ex. 2; Defs.' Resp. Pl.'s Mot. Summ. J. Ex. 3, DN 94-3). Therefore, Plaintiff's citizenship is Delaware. *See Shelton*, 2017 WL 455554, at *1 (citations omitted). Defendants are citizens of Kentucky and Missouri. (Compl. ¶¶ 10-13; Answer ¶ 4, DN 15). Because complete diversity of citizenship exists, the first requirement for subject matter jurisdiction is met. *See* 28 U.S.C. § 1332(a).

Defendants also contend the amount in controversy does not exceed the sum of $75,000. (Defs.' Mot. Dismiss 5, DN 81). For this Court to have jurisdiction, the amount in controversy must exceed $75,000, measured by "the value of the object of the litigation." 28 U.S.C. § 1332(a); *Adelman's Truck Parts Corp. v. Jones Transp.*, 797 F. App'x 997, 1000 (6th Cir. 2020) (citation omitted). When a party seeks a declaratory judgment or injunctive relief the court does not calculate the amount in controversy by looking at strictly monetary value, "but rather the value of the consequences which may result from the litigation." *Adelman's Truck Parts Corp.*, 797 F. App'x at 1000 (citation omitted). "The amount in controversy should be considered from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Id.* (citing *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007)).

From Plaintiff's perspective, Defendants' placement of its wells has prevented Plaintiff from advancing and recovering mineral reserves. (McCoy Dep. 94:23-95:1, Dec. 18, 2019, DN 94-4). According to Plaintiff's expert, there are millions of tons of minerals recoverable from the property worth many millions of dollars. (McCoy Aff. ¶ 13). Consequently, the economic value

4

of the rights Plaintiff seeks to protect is substantially more than $75,000. *See Adelman's Truck Parts Corp.*, 797 F. App'x at 1000.

This Court has subject matter jurisdiction in this case because there is complete diversity of citizenship and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Accordingly, the Court will deny Defendants' motion to dismiss.

**B.      Motions for Summary Judgment**

The parties have filed dueling motions for summary judgment. In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact left for trial. *See* Fed. R. Civ. P. 56(a). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party meets its burden, then the burden is on the non-moving to provide specific evidence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In making this determination the Court must review the cited evidence but it may also consider other material in the record such as depositions or documents. Fed. R. Civ. P. 56(c). The Court must view the evidence in the light most favorable to the non-moving party. *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 837 (6th Cir. 2013). But the non-moving party must do more than provide a "scintilla of evidence" in support of its position; the non-moving party must put forward sufficient evidence from which a jury could reasonably decide the issue in its favor. *Anderson*, 477 U.S. at 252.

It is not required that the non-moving party adduce evidence that would be admissible at trial. *See Celotex Corp.*, 477 U.S. at 323 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). The

non-moving party can offer evidence, such as affidavits, declarations, documents, or electronically stored information. *See id.* ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) . . . .").

### 1. *Termination of Lease*

In its Complaint, Plaintiff has alleged that the Manning Lease terminated because the property has failed to produce paying quantities[3] of oil or gas. (Compl. ¶¶ 75-85). In Kentucky, the law governing oil and gas leases is generally that applicable to real property. *See Ralston v. Thacker*, 932 S.W.2d 384, 387 (Ky. App. 1996). Kentucky courts have recognized that oil and gas leases may be terminated in three ways:

> The first ground is forfeiture. With respect to an oil and gas lease, the ground of forfeiture is the breach of an express or implied covenant, condition or obligation of the lease. The second ground is abandonment, which is the intentional and actual relinquishment of the leased premises. The third and final ground occurs when the lease terminates by its own terms. Where the primary term of an oil and gas lease has run and the lease provides for an extension for so long as oil or gas is produced in paying quantities, the lease will *ipso facto* terminate whenever production or development ceases for an unreasonable period of time.

*Hiroc Programs, Inc. v. Robertson*, 40 S.W.3d 373, 377 (Ky. App. 2000) (internal quotation marks omitted) (internal citations omitted) (citation omitted). Kentucky courts, however, have been imprecise in distinguishing between forfeiture and abandonment. *See, e.g.*, *Clark v. Wilson*, 316 S.W.2d 693, 696 (Ky. 1958) ("Abandonment and breach of the condition to develop the property forfeited the rights which passed under the Adams lease to the Sand Lick Oil and Gas Company." (citation omitted)); *Taylor v. Newman*, 318 S.W.2d 407, 408 (Ky. 1958) (noting that "the wells

---

[3] The term "paying quantities" means "such quantities as are susceptible of division between the parties and as will yield a royalty to the lessor that justifies the occupancy of and interference with his use of his lands by the operations." *Baker v. Magnum Hunter Prod., Inc.*, 473 S.W.3d 588, 596 (Ky. 2015) (citations omitted).

had been completely abandoned . . . [and] that the lease of the tract of 54 acres had been forfeited under the terms of the lease . . . .").

The Complaint alleges the Manning Lease terminated because Defendants' oil and gas wells failed to provide paying quantities as required by a covenant implied in the lease. (Compl. ¶¶ 75-85). This would be considered forfeiture under Kentucky law. *Clift v. RDP Co.*, 200 F. Supp. 3d 660, 674 (W.D. Ky. 2016) ("In Kentucky, a mineral lessee may forfeit its interest by breaching an express or implied obligation, including an implied obligation to develop the mineral leasehold." (internal citation omitted) (citation omitted)). Of crucial importance, a lessor must give notice to the lessee before filing suit in a case of forfeiture, but no such notice is required in the event of abandonment or ceased production. *See id.*; *Hiroc Programs*, 40 S.W.3d at 378 ("Whenever an action is based on forfeiture for breach of express or implied obligations in a lease, the lessor must provide notice and demand due diligence prior to filing suit." (citing *Carrs Fork Corp. v. Kodak Mining Co.*, 809 S.W.2d 699, 709 (Ky. 1991))). As explained in *B. & B. Oil Co. v. Lane*, 249 S.W.2d 705 (Ky. 1952):

> There can be no reason for notifying one who has abandoned a lease that suit will be filed. If he has abandoned it, he knows that fact and is entitled to no notice; while if lessee is only remiss or dilatory in the manner in which he is developing or operating the property, he is entitled to notice that he must improve his operations, and should he fail to heed the notice, suit will be brought to cancel the lease.

*Id.* at 706; s*ee also Carrs Fork Corp.*, 809 S.W.2d at 702 ("The law does not favor forfeiture and none should be allowed without the one claiming the right first giving notice that a forfeiture will be demanded unless the terms of the lease are followed."); *Clift*, 200 F. Supp. 3d at 675 ("Both before and after filing this action, the Clifts never told RDP Company to develop and mine the tract. Likewise, the Clifts accepted all royalty payments sent to them . . . . Accordingly, RDP Company did not breach any implied obligation to develop the mineral leasehold." (internal

7

citation omitted)). It is undisputed that Plaintiff did not give Defendants notice before bringing this action. "The filing of a lawsuit is not proper notice when a lessor seeks forfeiture on due diligence grounds." *Carrs Fork Corp.*, 809 S.W.2d at 702 (citation omitted).

Plaintiff seeks to terminate Defendants' lease on the basis that Defendants' wells have produced "such scarce quantities that it is insufficient to compensate [Plaintiff] for the inconvenience of the Defendants' occupancy and operations on the [p]roperty." (Compl. ¶¶ 51-52). There is no question that this is not a case of abandonment, as Defendants have continued to operate the subject wells, albeit at modest levels. Indeed, Plaintiff alleges as the grounds for its requested termination *insufficiency* of production, not that production had ceased for an unreasonable time. (Compl. ¶¶ 70-85). Plaintiff's conduct has been entirely consistent with a party objecting to inadequate production, as opposed to ceased production.[4] As such, Plaintiff's failure to notify Defendants its objection to the unsatisfactory production of oil from the property prior to filing suit bars Plaintiff from the termination it seeks in this action.

---

[4] Plaintiff's requested termination cannot be construed as a claim of cessation of production. Since no such claim is asserted in the Complaint, it is inappropriate to consider lapsed production in 2015-2016 as a basis for Defendants' breach. *See Clift*, 200 F. Supp. 3d at 673-74. It does appear that no oil was produced between the months of September 2015 (when 23 barrels were produced) and September 2016 (when 20 barrels were produced). (Pl.'s Mot. Summ. J. Ex. 7). This 11-month period of non-production does not warrant termination of the lease under the circumstances here. In fact, no case has been cited or located in which a Kentucky court has terminated a mineral lease of any kind for a period of non-production of less than one year. *Cf. Monarch Oil & Gas Co. v. Hunt*, 235 S.W. 772, 773 (Ky. 1921) ("It did nothing of consequence on the lease for more than one year after drilling in the wells before the commencement of this action. This was, under the facts of this case, an unreasonable time to delay the development of the lease."); *Hodges v. Mud Branch Oil & Gas Co.*, 109 S.W.2d 576, 577 (Ky. 1937) (holding lease abandoned where no oil was produced for three years); *Tanner v. Reeves*, 249 S.W.2d 526, 527-28 (Ky. 1952) (holding lease had been abandoned for lack of operation for more than one year); *Lane*, 249 S.W.2d at 706 (Ky. 1952) ("It is clear . . . that in the instant case the appellants abandoned the lease when they failed to operate it for more than four years.").

Plaintiff's attempt to cancel the Manning Lease would also be precluded by waiver. It is undisputed that Plaintiff continued to receive royalty payments from Defendants through November 2019, when it attempted to "return" those funds, including checks which had been negotiated by Plaintiff between October 2016 and December 2018. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 10, at 1-7). As the Sixth Circuit has noted:

> Kentucky defines waiver as the "intentional relinquishment of a known right." *Bates v. Grain Dealers Nat'l Mut. Fire Ins. Co.*, 283 S.W.2d 3, 5 (Ky. 1955). Whether a party's actions constitute a waiver is a question of law. *Eaton v. Trautwein*, 155 S.W.2d 474, 478 (Ky. 1941). Whether such actions occurred is a question of fact for the jury. *Id*. Because Kentucky generally disfavors the forfeiture of leases, we "readily adopt any circumstances that indicate a waiver of forfeiture." *First Nat'l Bank & Tr. Co. v. Martin Marietta Materials, Inc.*, 22 F. App'x 546, 549 (6th Cir. 2001). "The general rule is that when rent is accepted by a lessor with knowledge of particular conduct which is claimed to be a default on the part of the lessee, acceptance of the rent constitutes a waiver by the lessor of the lessee's default." *Id*. Constructive knowledge of a condition is sufficient to establish waiver in Kentucky.

*Lyles v. RDP Co.*, 702 F. App'x 385, 399 (6th Cir. 2017) (citing *Batson v. Clark*, 980 S.W.2d 566, 576 (Ky. App. 1998)); *see also Clift*, 200 F. Supp. 3d at 673 ("Since the Clift family has been farming the land since at least 1977, the Clifts certainly knew that portion of the tract had been mined. However, the Clifts cashed each and every royalty payment RDP Company sent to them through January 2014. Until filing the instant action, the Clifts neither demanded that RDP Company pay the production royalty, nor notified RDP Company that the Clifts considered the lease inoperative. 'Under Kentucky law, by accepting these payments with knowledge of the alleged breach, the [Clifts] waived their right to terminate' the lease for the breach." (quoting *First Nat'l Bank & Tr. Co. v. Marietta Materials, Inc.*, 22 F. App'x 546, 550 (6th Cir. 2001))); *Ohio Valley Oil & Gas Co. v. Irwin Dev. Co.*, 212 S.W. 110, 112 (Ky. 1919) ("Acceptance of rent for the defaulted period, or any part of it, will generally be a waiver of the right to declare a forfeiture." (citation omitted)). As noted above, Plaintiff received and cashed royalty checks following the

9

11-month period in 2015 and 2016 when no oil was produced. While Plaintiff claims that the checks were cashed in error, its acceptance of those royalties constituted a waiver of any breach of the Manning Lease as a matter of law, and Defendants are therefore also entitled to summary judgment on this basis.

### 2. *Trespass*

In the Complaint, Plaintiff alleges that the Manning Lease terminated and as a result, Defendants' activity on the property constitutes the tort of trespass to real property. (Compl. ¶¶ 86-87). Alternatively, Plaintiff alleges:

> 88. . . . [I]f the Manning Lease has not already terminated and the Defendants' rights thereunder have not already been extinguished, the Defendants' conduct and use of the Property constitute trespass because they are not a reasonable use of the surface for the purposes of extracting of oil and gas from the Property.
> 89. The Defendants' conduct and use of the Property as described herein are not in good faith and are unreasonably interfering with Bluegrass's ownership of the Property.
> 90. As a result of the Defendants' trespass on the Property, and if the Manning Lease has not already terminated and the Defendants' rights thereunder have not already been extinguished, Bluegrass requests the Court to declare the Manning Lease has terminated and that any and all rights thereunder have been extinguished.

(Compl. ¶¶ 88-90). While Plaintiff did not move for summary judgment on this claim, Defendants seek dismissal of this claim. (Defs.' Mot. Summ. J. 15-17).

Under Kentucky law, the tort of trespass to real property "is an injury to possession . . . ." *Drane v. Graves*, 88 S.W.2d 927, 931 (Ky. 1935); *see also* KRS 381.231(1) ("A 'trespasser' means any person who enters or goes upon the real estate of another without any right, lawful authority or invitation, either expressed or implied . . . ."). Neither the allegations in the Complaint nor the evidence in the record support a claim for trespass. Plaintiff's allegations of trespass are nothing but a reiteration of its assertion that Defendants are not sufficiently producing oil or gas on the

10

property, but Plaintiff has not alleged how Defendants have entered onto the property and taken actions beyond those which are permitted by the terms of the Manning Lease. Because the Manning Lease is still in effect, this claim fails. Summary judgment will be entered in favor of Defendants on this claim.

### 3. *Waste*

Assuming that the Manning Lease is still in effect, Plaintiff alternatively asserts that Defendants have committed waste under Kentucky common law and KRS 381.350. (Compl. ¶¶ 98-105). Defendants seek dismissal of this claim. (Defs.' Mot. Summ. J. 16-19).

KRS 381.350 provides:

> If any tenant for life or years commits waste during his estate or term, of anything belonging to the tenement so held, without special written permission to do so, he shall be subject to an action of waste, shall lose the thing wasted, and pay treble the amount at which the waste is assessed.

KRS 381.350. As Kentucky's highest court has explained, "[t]here is an obvious and well-recognized distinction between voluntary waste, which consists in the commission of some destructive act, and permissive waste, consisting in omission by a tenant for life or years to keep the land and tenements in proper repair." *Continental Fuel Co. v. Haden*, 206 S.W. 8, 11 (Ky. 1918) (quoting *Smith v. Mattingly*, 28 S.W. 503, 503 (Ky. 1894)); *see also* 93 C.J.S. *Waste* § 7 ("'Voluntary waste,' sometimes referred to as 'commissive waste,' is active or positive. It involves the commission of deliberate, willful, or voluntary destruction of the freehold or the carrying away of something attached to the freehold. Voluntary waste typically results from destruction, alteration, or removal of buildings or natural resources. Further, waste can consist of the pulling down of a house or the removal of objects fixed to, and constituting a material part of, the freehold." (internal footnotes omitted) (footnote omitted)); 93 C.J.S. *Waste* § 8 ("'Permissive waste; is the failure of the tenant to exercise the ordinary care of a prudent person for the

11

preservation and protection of the estate for future interests and involves acts of omission rather than commission. Permissive waste is waste permitted by the tenant and consists of the neglect or omission to prevent injury or the sufferance or permission of injury to the inheritance or freehold. For example, the suffering of buildings to fall into decay from neglect, permitting a stranger to injure the property, or otherwise failing to perform a duty to protect the inheritance are activities which may constitute permissive waste. Thus, the mere failure to maintain property can constitute waste." (internal footnotes omitted) (footnote omitted)).

In the Complaint, Plaintiff alleges:

> 99. . . . [T]he Defendants' conduct and use of the Property as described herein are not in good faith and are unreasonably interfering with Bluegrass's ownership of the Property.
> 100. Bluegrass has not consented to the Defendants' exploration and drilling for, and extraction of, oil and gas, or any other activities whatsoever, on the Property.
> 101. The Defendants' wrongful and unjustifiable efforts to extract oil and gas from the Property as described herein are not necessary, are an unreasonable use of the Property, and are unreasonably interfering with Bluegrass's ownership of the Property.
> 102. The Defendants' wrongful and unjustifiable efforts to extract oil and gas from the Property are a permanent harm to the Property to the prejudice of Bluegrass's ownership of the Property.

(Compl. ¶¶ 99-102). The Complaint does not specify whether Plaintiff is asserting a claim for voluntary or permissive waste.

Nevertheless, Plaintiff has not presented proof to show or cited any legal authority to support the proposition that Defendants' conduct qualifies as permissive or voluntary waste. *See Cornett v. Magnum Hunter Prod., Inc.*, No. 13-145-GFVT, 2014 WL 1338708, at *3 (E.D. Ky. Mar. 31, 2014) ("Though Kentucky courts trace the origins to [KRS 381.350] [] to the Thirteenth Century English Statute of Gloucester, the parties have been unable to produce a single case wherein this statute has ever been applied to forfeit an oil and gas lease for failure of the lessee to

generate sufficient royalties for the lessor." (citing *Salyer's Guardian v. Keeton*, 283 S.W. 1015, 1018 (Ky. 1926))). The Manning Lease authorizes Defendants to drill and produce oil and gas on the property, and the alleged wrongdoings by Defendants are consistent with their rights under the Manning Lease. *See id.* ("Magnum Hunter is doing nothing that the Plaintiffs have not given it special written permission to do, and as a result, its conduct is excepted from the Kentucky waste statute."). Accordingly, Defendants are entitled to summary judgment on this claim.

### 4. *Breach of Implied Duty of Good Faith and Fair Dealing*

Finally, Plaintiff asserts that Defendants breached the implied duty of good faith and fair dealing by interfering with the Plaintiff's ownership of the property. (Compl. ¶¶ 113-20). Under Kentucky law, "there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out." *Farmers Bank & Tr. Co. of Georgetown v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) (citing *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991)). Plaintiff alleges in its Complaint:

> 116. The Defendants' conduct and use of the Property as described herein are not in good faith and are unreasonably interfering with Bluegrass's ownership of the Property.
> 117. The Defendants' wrongful and unjustifiable efforts to extract oil and gas from the Property and obstruct Bluegrass's mining operations on the Property as described herein are not necessary, are an unreasonable use of the Property, and are unreasonably interfering with Bluegrass's ownership of the Property.
> 118. Even if royalties are paid to Bluegrass as a result of Defendants' drilling activities, such royalties are not sufficient to compensate it for the inconvenience of Defendants' occupancy of and operations on the Property.
> 119. The Defendants' conduct and use of the Property as described herein, including Defendants' wrongful and unjustifiable efforts to obstruct Bluegrass's mining operations on the Property, constitute a breach of the duty of good faith and fair dealing implied in the Manning Lease.

(Compl. ¶¶ 116-19).

"An implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights." *Farmers Bank & Tr. Co.*, 171 S.W.3d at 11 (citing *Hunt Enters.,*

13

*Inc. v. John Deere Indus. Equip. Co.*, 162 F.3d 1161, 1998 WL 552795, at *2 (6th Cir. 1998)). Under the terms of the Manning Lease, Defendants have the right to drill and produce oil on Plaintiff's property. Notwithstanding Plaintiff's argument, Defendants' expressed intent to increase the number of wells on the property has not breached the implied covenant, and this claim fails as a matter of law.

### C. Plaintiff's Motion to Exclude

Plaintiff has also moved to exclude the opinions of Defendants' expert witness, Karen J. Greenwell. Because the Court is granting summary judgment in favor of Plaintiff, it is unnecessary to address the merits of this motion. Accordingly, this motion will be denied as moot.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment (DN 83) and Defendants' Motion to Dismiss (DN 81) are **DENIED**.

2. Defendants' Motion for Summary Judgment (DN 82) is **GRANTED**, and the Complaint is **DISMISSED**.

3. Plaintiff's Motion to Exclude (DN 80) is **DENIED AS MOOT**.

4. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

January 11, 2022

cc: counsel of record